## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE SLOWINSKI, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 20 CV 2381 |
| v. | ) ) | Judge John Robert Blakey |
| FORCES OF NATURE, INC. | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christine Slowinski brings this putative class action under Illinois law against Defendant Forces of Nature, Inc., alleging that Defendant has mislabeled its homeopathic over-the-counter (OTC) drugs, causing her and other purchasers various economic and non-economic injuries. Defendant has moved to dismiss. [24]. For the reasons explained below, this Court denies Defendant's motion.

## I.    The Complaint's Allegations

Defendant manufactures, markets, sells, and distributes homeopathic medicinal products throughout the State of Illinois and the country under the brand name "Forces of Nature." [21] at ¶¶ 7, 10–11. Plaintiff, a purchaser of these products, alleges that Defendant falsely advertises thirteen of its products as containing certain active ingredients when those products do not, in fact, contain such ingredients. *Id.* at ¶¶ 8–9. For instance, according to Plaintiff, Defendant advertises and labels a maximum strength sinus product as containing the active ingredients "occimim,"

1

"berberis vulgaris," "allium sativum," "thuja occidentalis," "echinacea angustifoolia," "silica," and "trigonella foenum-graceum," when those ingredients are not present in the product. *Id.* at ¶ 8(k). Plaintiff claims she tested a sample of Defendant's maximum strength sinus product through a Fourier Transform Infrared Spectrometer (FTIR), which revealed that it contained no other substance but water and ethanol. *Id.* at ¶¶ 15–16. Plaintiff alleges that she purchased these products without knowing they did not contain the listed ingredients and, as a result, suffered injuries including lost money, time, and "stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling." *Id.* at ¶¶ 27, 33. She last purchased Defendant's products on February 10, 2020. *Id.* at ¶ 8.

To redress her alleged injuries, Plaintiff brings a four-count complaint on behalf of a putative class, asserting claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count I); common law fraud (Count II); unjust enrichment (Count III); and breach of express warranties (Count IV). *Id.* at ¶¶ 48–73. Defendant has moved to dismiss the first amended complaint in its entirety. [24].

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also

contain "sufficient factual matter" to state a facially plausible claim to relief—one
that "allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
*Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer
possibility" that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. Thus,
"threadbare recitals of the elements of a cause of action" and mere conclusory
statements will not suffice. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018)
(quoting *Iqbal*, 556 U.S. at 678). In evaluating a complaint under Rule 12(b)(6), this
Court accepts all well-pleaded allegations as true and draws all reasonable inferences
in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.

## III.    Analysis

In moving to dismiss, Defendant argues that: (1) it did not, as a matter of law,
deceptively label its products; (2) Plaintiff was contributorily negligent in purchasing
the products; (3) federal law preempts Plaintiff's claims; and (4) Plaintiff has failed
to plead her fraud-based allegations with particularity. [25]. This Court first sets
forth the federal framework regulating homeopathic drugs before turning to
Defendant's arguments.

### A.    Federal Framework on Homeopathic Drugs

In 1938, after becoming "increasingly concerned about unsafe drugs and
fraudulent marketing," *Wyeth v. Levine*, 555 U.S. 555, 566 (2009), Congress enacted
the Federal Food, Drug, and Cosmetic Act (FDCA), ch. 675, 52 Stat. 1040 (codified as
amended at 21 U.S.C. § 301 *et seq.*). Relevant here, Congress prohibited the

3

"adulteration or misbranding" of any "drug"; a "drug" is "misbranded" if its labeling is "false or misleading in any particular."  21 U.S.C. §§ 331(b), 352.  Under the FDCA, a "drug" includes "articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States [(HPUS)], or official National Formulary, or any supplement to any of them."  *Id.* § 321(g)(1).

As another district court has observed in considering claims regarding homeopathic drugs, HPUS merely sets forth standards for source, composition, and preparation of homeopathic drugs and contains monographs of drug ingredients used in homeopathic treatment.  *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1183 (C.D. Cal. 2011).  Unlike non-homeopathic OTC drugs, the FDA "has largely abdicated any role it might have had in creating standards for homeopathic OTC drugs, and has instead attempted to delegate this authority to the non-governmental organization that determines whether homeopathic substances should be included in the HPUS."  *Id.* at 1191; *see also In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. CIV.A. 13-11343-NMG, 2014 WL 866571, at *4 (D. Mass. Mar. 5, 2014) (commenting that the FDA implements comprehensive regulations as to the prescription drug industry, while maintaining an "insufficient regulatory framework" as to the homeopathic drug industry), *aff'd on other grounds*, 779 F.3d 34 (1st Cir. 2015).  As such, the mere fact that a drug has been included in HPUS does not mean that it has been approved by the FDA for safety or efficacy, or that the FDA has approved its labels.  *See Forcellati v. Hyland's, Inc.*, No. CV121983GHKMRWX, 2015 WL 9685557, at *3 (C.D. Cal. Jan.

12, 2015); *Jovel v. Boiron Inc.*, No. 2:11-CV-10803-SVW-SH, 2013 WL 12164622, at *11 (C.D. Cal. Aug. 16, 2013).

### B. Deceptive Labeling

Against this backdrop, Defendant argues that its labels comply with federal standards and are thus not deceptive as a matter of law, therefore foreclosing all of Plaintiff's claims, which rely upon the common contention that Defendant misrepresented the ingredients contained in its products. [25] at 2–7, 14–15. Implicit in this argument is the notion that, because the FDA has signed off on Defendant's labeling, its labels cannot be misleading as a matter of law. *Id.* Not so. As noted above, a drug's inclusion in HPUS does not mean that the FDA has approved its labels. *Forcellati*, 2015 WL 9685557, at *3.

Relatedly, Defendant also argues that Plaintiff fundamentally misunderstands homeopathy, insisting that it maintains accurate labels and that Plaintiff has falsely accused it by alleging otherwise. [30] at 2–5. While this may (or may not) be the case ultimately, such an argument is misplaced on a motion to dismiss. This Court must take as true Plaintiff's allegations that, after testing samples of Defendant's products via FTIR, Plaintiff discovered that they did not contain the active ingredients listed on the labels. *Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020). In short, this Court cannot simply conclude at this juncture that Defendant accurately labeled its products.

5

## B.    Contributory Negligence

Next, Defendant argues that Plaintiff was contributorily negligent because she did not understand the labels on the products she purchased; that negligence, Defendants says, bars all of her claims. [25] at 8–9. This Court disagrees.

First, under Illinois law, a "victim's negligence is not a defense to an intentional tort." *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 573 (7th Cir. 2004); *see also Straits Fin. LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 376 (7th Cir. 2018). Thus, Plaintiff's alleged contributory negligence, even if proven, would not bar Plaintiff's ICFA and fraud claims.

Second, contributory negligence constitutes an affirmative defense and ordinarily presents "a factual issue to be decided by the trier of fact." *Cont'l Grp., Inc. v. Lincoln Land Moving & Storage, Inc.*, 710 F.2d 368, 372 (7th Cir. 1983); *see also Lomec v. United States*, No. 12 C 9439, 2014 WL 4699500, at *2 (N.D. Ill. Sept. 22, 2014). At this stage, the record remains undeveloped, and thus, this Court has no basis to conclude that Defendant would succeed on the merits of its contributory negligence defense.

## C.    Preemption and Primary Jurisdiction

Defendant also argues that the doctrines of preemption and primary jurisdiction bar Plaintiff's state-law claims. [25] at 9–14. This Court addresses both arguments below.

### 1.    Preemption

The Supremacy Clause of the Constitution provides that the Constitution and federal laws constitute "the supreme Law of the Land . . . Laws of any State to the Contrary notwithstanding."  U.S. Const., art. VI, cl. 2.  Accordingly, the Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Dolin v. GlaxoSmithKline LLC*, 901 F.3d 803, 811 (7th Cir. 2018) (quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)), *cert. denied*, 139 S. Ct. 2636 (2019).

Preemption comes in three forms: (1) express preemption, which occurs when "Congress clearly declares its intention to preempt state law"; (2) field preemption, which occurs when the "'structure and purpose' of federal law shows Congress' intent to preempt state law"; and (3) conflict preemption, when there exists an "actual conflict between state and federal law," rendering it impossible for a person to comply with both.  *Id.* (first quoting *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010); and then *Guilbeau v. Pfizer Inc.*, 880 F.3d 304, 310 (7th Cir. 2018)); *see also Effex Capital, LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 893 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 1122 (2020).  Defendant's brief fails to make clear which form (or forms) of preemption ought to apply here, so this Court analyzes all three.

Express preemption exists only when Congress has declared its intention to preempt state regulation through a direct statement in the text of a federal law.  *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 546 (7th Cir. 2020), *reh'g denied* (Aug. 6, 2020).  Defendant alludes generally to 21 U.S.C. § 379r(a), which preempts state-law

claims that impose a requirement on any drug that "is different from or in addition to, or that is otherwise not identical with" a requirement under the FDCA, the Poison Prevention Act of 1970, or the Fair Packaging and Labeling Act. Yet Defendant has not identified any state law that meets this standard. To the contrary, the FDCA prohibits misbranding of drugs, which occurs if the drug's label is "false or misleading in any particular," 21 U.S.C. § 352, and Plaintiff's state-law claims would also require Defendant to refrain from falsely or misleadingly label their products. Granting Plaintiff relief would thus not impose a state requirement "different from or in addition to, or that is otherwise not identical with" that of the FDCA. 21 U.S.C. § 379r(a); *see also, e.g.*, *Jovel*, 2013 WL 12164622, at *11 (holding that the FDCA did not expressly preempt the plaintiff's state-law claims asserting that defendant labeled its products in a manner that was not false or misleading); *Forcellati*, 2015 WL 9685557, at *3 (noting that the legislative history surrounding § 379r makes clear that Congress did not mean to preempt state laws prohibiting false and misleading advertising).

Plaintiff cites *Carter v. Novartis Consumer Health, Inc.*, where the district court found that federal regulations expressly preempted the plaintiff's state-law claims alleging that defendant falsely advertised and marketed over-the-counter cough and cold medicines as "safe and effective for children under the age of six." *Id.* at 1277, 1280–82. There, however, the court observed that the FDA had set forth the "approved indications for use and age-dependent dosage instructions that must be present on the product labeling." *Id.* at 1280. Thus, a state-law claim attempting to

8

impose a requirement "different from" or "in addition to" the FDA requirements was expressly preempted. *Id.* at 1283. Here, in contrast, the FDA has not regulated the specific contents of the labels Plaintiff challenges, so her state-law claims do not seek to impose any requirement "different from" or "in addition to" any FDA requirement. *See Delarosa*, 818 F. Supp. 2d at 1189 (distinguishing *Carter* as arising from facts concerning non-homeopathic OTC drugs, which the FDA regulates through a "comprehensive process").

Nor does field preemption apply. Field preemption remains "rare" and applies only where federal law "occupies a field" of regulation "so comprehensively that it has left no room for supplementary state legislation." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 651–52 (7th Cir. 2019) (quoting *Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490, 498 (7th Cir. 2018)). Defendant argues that Congress has clearly occupied the field of homeopathic regulation, [25] at 9, yet points to no "textual anchor in any statute or regulation" that suggests that is true, *Marsh v. CSL Plasma Inc.*, No. 19 C 6700, 2020 WL 7027720, at *5 (N.D. Ill. Nov. 30, 2020) (holding that no preemption of state-law exists in the field of plasma donation because there is nothing "in any statute or regulation that suggests Congress has occupied" that entire field). Absent any indicia of congressional intent to "foreclose any state regulation" in the area of homeopathic medicine, field preemption simply remains inapplicable. *Di Joseph v. Standard Ins. Co.*, 776 F. App'x 343, 347 (7th Cir. 2019) (quoting *Int'l Ass'n of Machinists*, 904 F.3d at 498).

Finally, conflict preemption applies only where federal and state law directly conflict in a way to render it impossible for someone to simultaneously comply with both. *C.Y. Wholesale*, 965 F.3d at 547. Here again, Plaintiff's state-law claims merely seek to impose similar requirements to what federal law already requires—truthful statements on labels. Therefore, no such conflict exists between federal and state law. *See Jovel*, 2013 WL 12164622, at *12; *Delarosa*, 818 F. Supp. 2d at 1190.

### 2. Primary Jurisdiction

Finally, this Court rejects Defendant's argument that the doctrine of primary jurisdiction bars Plaintiff's claims. *Contra* [25] at 13–14. Primary jurisdiction constitutes a "permissive doctrine that applies when resolving a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, 917 F.3d 538, 542 (7th Cir. 2019) (quoting *United States ex rel. Sheet Metal Workers Int'l Ass'n, Local Union 20 v. Horning Investments, LLC*, 828 F.3d 587, 592 (7th Cir. 2016)).

Here, the FDA does not possess special competence in assessing whether drug labels are false and misleading. Instead, courts can, and do, make these determinations regularly. *See Jovel*, 2013 WL 12164622, at *12; *Delarosa*, 818 F. Supp. 2d at 1191; *see also City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1065 (N.D. Ill. 2016) (holding that the primary jurisdiction doctrine did not require the court to abstain from hearing a case alleging that opioid manufacturers falsely marketed the risks, benefits, and superiority of opioids); *Gubala v. CVS*

10

*Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at \*16 (N.D. Ill. Mar. 15, 2016) ("The Court is well qualified to interpret the regulations and to resolve matters regarding allegations of false and misleading representations."). This Court thus declines to abstain from considering the merits of this case under the primary jurisdiction doctrine.

### D.     Sufficiency of Fraud Allegations

Finally, Defendant challenges the adequacy of Plaintiff's fraud-based allegations. [25] at 14–15. Federal Rule of Civil Procedure 9(b) requires pleadings to "state with particularity the circumstances constituting fraud." Plaintiff must therefore describe the who, what, when, where, and how of the alleged fraud. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

Plaintiff does just that. She asserts that Defendant's labeling is false and misleading because it causes consumers to believe that Defendant's products contain certain active ingredients when they do not. [21] at ¶¶ 1, 10–19. She also describes in detail how she formed the basis of these allegations by conducting the FTIR experiment. *Id.* at ¶¶ 10–19. Plaintiff alleges that she and other consumers would not be able to understand that Defendant's products do not contain the listed active ingredients without any advanced understanding of chemistry and without conducting complex experiments on the products. *Id.* at ¶ 25. Plaintiff also alleges that she purchased the products most recently on February 10, 2020, and that Defendant sells the products throughout Illinois. *Id.* at ¶¶ 7, 9. These allegations

11

sufficiently describe the who, what, when, where, and how of the fraud with particularity. *See Benson*, 944 F.3d at 646.

## IV.    Conclusion

For the reasons explained above, this Court denies Defendant's motion to dismiss [24]. The parties shall meet and confer and file a joint status report by April 9, 2021 proposing reasonable case management dates for the remaining life cycle of the case. If the parties believe that a settlement conference would be fruitful, they should contact Chambers, and this Court will make a referral to the assigned Magistrate Judge for this purpose.

Dated:  March 26, 2021

Entered:

John Robert Blakey
United States District Judge

12